# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

**BARRY A. BROWN,**
**TDCJ-CID No. 2041759,**

      **Plaintiff,**

**v.**                                                              **CIVIL NO. SA-15-CA-396-PM**

**DEPUTY ERIC RODRIGUEZ, Badge No.**
**4002,**

      **Defendant.**

## MEMORANDUM DECISION AND ORDER

Pursuant to the consent of the parties and transfer of the case to the undersigned,[1] and

consistent with the authority vested in the United States Magistrate Judges under the provisions

of 28 U.S.C. § 636 (c)(1) and Appendix C of the Local Rules for the Assignment of Duties to

United States Magistrate Judges in the Western District of Texas, the following Memorandum

Decision and Order to address pending motions.

### I.  JURISDICTION

Jurisdiction is noted pursuant to 28 U.S.C. §§ 1331, 1343 and 42 U.S.C. § 1983.

### II.  SUMMARY OF PROCEDURAL HISTORY

Plaintiff, Barry A. Brown ("plaintiff"), acting *pro se*, then in the custody of the Bexar

County Adult Detention Center and now in the custody of the Texas Department of Public

Safety–Criminal Institutions Division, initiated this suit on or about May 12, 2015, when he filed

---

[1] Docket nos. 6, 7, 21.

a motion to proceed *in forma pauperis* ("IFP")[2] and an original complaint naming two

defendants, Bexar County Sheriff's Department Deputy Eric Rodriguez ("Deputy Rodriguez")

and the Bexar County Adult Detention Center ("BCADC").[3]   Plaintiff's original complaint

asserts two claims, one for excessive use of force and a second for denial of medical care, each

arising on March 30, 2015.[4]   Plaintiff's complaint does not specify the relief plaintiff seeks, other

than having his "excessive force claim granted and other relief to which I may be entitled"

awarded to him.[5]   More specifically, plaintiff states in his sworn complaint that on March 30,

2015:

- [Deputy Rodriguez] "assaulted me using 'excessive force' namely by slamming the cell door on the left side of my body (repeatedly), which caused a serious knee injury and bruises and lacerations on my left arm;"[6]

- "The said officer assaulted me using 'excessive force' for about twenty five (25) to thirty (30) seconds by backing up then lunging forward, ramming the cell door with the left side of his body while my body (was not) clear of the cell door;"[7] and

- "After the incident I told the said officer that I could not stand on my left knee and

---

[2]   Docket no. 2.

[3]   Docket no. 1 at 1 ("original complaint").  As discussed below, on July 29, 2015, the Court dismissed plaintiff's excessive use of force claim against BCADC after plaintiff sought to file an amended complaint which no longer named BCADC as a party.  See docket no. 19 at 2.

[4]   Id. at 3-5.

[5]   Id. at 4.

[6]   Id.

[7]   Id.  Plaintiff provides a copy of his grievance form, dated March 30, 2015, which contains a varying depiction of the incident: "Detention Officer Rodriguez 4002 did use an 'excessive' use of force on me namely by slamming the cell door on my left arm and left leg remained pinned, which caused lacerations on my left arm and left leg."  Id. at 7.

that I was having (severe) pain, I requested that he . . . get me medical treatment."[8] Plaintiff alleges he received medical treatment from the medical department the next day, March 31, 2015, and "they gave me an ice pack for my knee and released me."[9]

On May 20, 2015, the Court granted plaintiff's motion for leave to proceed IFP and summons issued.[10]  On June 9, 2015, defendants filed a corrected motion to dismiss.[11]  On July 8, 2015, plaintiff filed a motion to amend his complaint.[12]  On July 29, 2015, Judge Ezra entered an order which granted defendants' motion to dismiss BCADC as a party defendant but, construing Brown's allegations in the light most favorable to plaintiff, declined to dismiss plaintiff's excessive use of force claim against Deputy Rodriguez and denied as moot plaintiff's motion to amend his complaint.[13]

---

[8]  Id. at 5. Plaintiff also alleges Deputy Rodriguez refused to notify his supervisor or provide medical treatment to plaintiff and "started calling me racial slurs." Id.

[9]  Id.  In an unsworn grievance dated March 30, 2015, plaintiff stated he suffered "lacerations on my left arm and left leg." Id. at 7.

[10]  Docket nos. 3-5.

[11]  Docket no. 9.  Deputy Rodriguez submitted one exhibit in support of his motion to dismiss, Exhibit A—plaintiff's medical records from March 31st, April 3rd, and April 7th, 2015. Id. exhibit A.

[12]  Docket no. 16.

[13]  Docket no. 19.  With respect to plaintiff's allegations against Deputy Rodriguez, the Court's July 29, 2015 order concluded plaintiff's excess use of force claim against Deputy Rodriguez should not be dismissed, rejecting Deputy Rodriguez's arguments that plaintiff's allegations were "conclusory," did not establish the incident "was anything more than an accident," and plaintiff's injuries were de minimis.  Id. at 2-4.  Because defendant submitted plaintiff's medical records in support of his argument plaintiff suffered "no injury," the Court construed defendant's motion to dismiss as one for summary judgment.  Id. at 4.  The Court found that Brown's sworn complaint (in which Brown states he "suffered pain and thereafter he walked with a limp and required a knee brace") and Brown's evidence that "Rodriguez thereafter

On July 30, 2015, the Court entered its initial scheduling order which established the following deadlines: September 21, 2015 as the deadline to file any motions to amend or supplement pleadings or join parties; December 4, 2015 as the deadline for discovery; and December 18, 2015 as the deadline to file any dispositive motions.[14]  On July 31, 2015, Judge Ezra transferred this case to the docket of the undersigned based on the consent of the parties.[15]

On August 13, 2015, plaintiff filed a second motion to amend complaint, seeking to "join 'Bexar County' as a defendant party" and again allege a deficient policy, practice or custom by the County.[16]  On August 19, 2015, the Court denied plaintiff's motion to amend, noting that plaintiff earlier "voluntarily dismissed any claims against the County" after BCADC moved to dismiss plaintiff's claims against it, and plaintiff's "three-page submission . . . makes [only] conclusory assertions that the County has a constitutionally deficient custom, policy, or practice relating the alleged excessive use of force."[17]

On August 25, 2015, plaintiff filed motions to appoint counsel, for jury trial, and for a conference with counsel.[18]  The same day, the Court entered three separate orders which denied

---

called Brown a 'racial slur' . . . which suggests Rodriguez acted maliciously" raised genuine issues of material fact to preclude entry of summary judgment at that time.  Id. at 3, 4-5.  The July 29, 2015 order cited Hudson v. McMillian, 503 U.S. 1, 112 S. Ct. 995 (1992), but not the then-recent (June 22, 2015) decision in Kingsley v. Hendrickson, __ U.S. __, 135 S.Ct. 2466 (2015).

[14]  Docket no. 20.

[15]  Docket no. 21.

[16]  Docket no. 22 at 3.

[17]  Text-only order dated Aug. 19, 2015.

[18]  Docket nos. 24, 25, 26.

plaintiff's motion to appoint counsel, mooted plaintiff's motion for jury trial, and denied plaintiff's motion to meet and confer.[19]

On August 26, 2015, Deputy Rodriguez filed his answer to plaintiff's original complaint.[20]  In the answer, defendant alleges six affirmative defenses, including qualified immunity, and demands a trial by jury.[21]

On August 28, 2015, plaintiff filed a motion to reconsider the ruling which denied plaintiff's motion to amend his complaint.[22]  The same day, the Court entered an order denying plaintiff's motion for reconsideration.[23]

On December 7, 2015, Deputy Rodriguez filed a motion for summary judgment.[24]  The same day, the Court entered a seven-page order informing plaintiff of summary judgment procedures and calling upon plaintiff to file a response to defendant's motion for summary judgment by December 28, 2015.[25]  On December 22, 2015, plaintiff filed a "motion for summary judgment," which sets out plaintiff's response to defendant's motion for summary

---

[19]  Text-only orders dated Aug. 25, 2015.

[20]  Docket no. 27.

[21]  Id. at 1.

[22]  Docket no. 28.

[23]  Text-only order dated Aug. 28, 2015.

[24]  Docket no. 35.  Deputy Rodriguez submitted two exhibits in support of his motion: Exhibit A—affidavit of Deputy Rodriguez and Exhibit B—affidavit of Darryl B. Thomas, M.D. Id. exhibits A, B.

[25]  Docket no. 36.

judgment and asks for entry of judgment as a matter of law in favor of plaintiff.[26]  In his affidavit,

plaintiff testifies, in sum, that on March 30, 2015:

- "as I exited my cell the name officer slammed the cell door on parts of my body, then he continued ramming the cell, assaulting me using excessive force . . . ;"[27]

- "I then requested medical care but the named officer . . . denied me medical care;"[28]

- "I was in severe pain, I ask the officer to call in a code one—(which is a medical emergency code for BCADC), the named officer refused to call in a code one and refused to report the incident;" and[29]

- "I requested medical care for the injuries the named officer caused and (several) other inmates ask the named officer to get me medical care, the officer refused to have me seen by medical."[30]

---

[26]  Docket no. 38.  Plaintiff attached two exhibits to the motion he filed with the District Clerk: Exhibit B—affidavit of plaintiff and Exhibit C—affidavit of Hakeem Hampton.  Id. exhibits B, C.  Although plaintiff's motion also references two other exhibits (Exhibit A—policy and/or custom of BCADC, page 1 of inmate handbook 2013, and Exhibit D—affidavit of inmate Raul Sandoval), no such exhibits were attached to plaintiff's motion.  Id. at 2.  Plaintiff did not file a separate response to Deputy Rodriguez's motion for summary judgment and the Court liberally construes plaintiff's motion for summary judgment as a response to Deputy Rodriguez's motion.

[27]  Id., exhibit B at 1.

[28]  Id. at 2.

[29]  Id.

[30]  Id.  Plaintiff also submits the affidavit of Hakeem Hampton, "an inmate incarcerated at the Bexar County Adult Detention Center."  Docket no. 38, exhibit C at 1.  Hampton testifies "[o]n March 30, 2015 on AF Unit I was eating my meal when I saw Officer Rodriguez run towards eleven cell and started ramming the cell door.  I could see part of inmate Brown's arm and leg in between the cell door."  Hampton also states "[s]everal of us inmates demanded that the officer, Rodriguez, send inmate Brown to medical, but he refused to do so."  Id. at 1-2.  Hampton does not specifically state that Rodriguez "ramm[ed]" the cell door on plaintiff, why Hampton concluded the action could be described as "ramming," that he knows plaintiff's arm and leg were injured (and why), or that Hampton himself asked Rodriguez to send inmate Brown to medical.

On December 30, 2015, Deputy Rodriguez filed his response to plaintiff's motion for summary judgment.[31]  On January 11, 2016, plaintiff filed a reply in support of plaintiff's motion for summary judgment.[32]  On January 14, 2016, defendant filed an objection to plaintiff's reply.[33]  On February 5, 2016, plaintiff filed a response to defendant's objection.[34]  On February 25, 2016, plaintiff filed a motion to amend his complaint seeking to assert claims against BCADC and Sheriff Susan Pamerleau.[35]  On March 1, 2016, defendant filed a response to plaintiff's motion.[36]  On March 15, 2016, defendant filed a motion to strike certain discovery requests of plaintiff.[37]  On March 24, 2016, plaintiff filed a "corrected" motion for summary judgment.[38]  On March 28, 2016, plaintiff filed a motion to "dismiss" defendant's motion to strike plaintiff's discovery requests.[39]  On March 29, 2016, defendant filed a motion to strike plaintiff's corrected motion for summary judgment.[40]  On March 31, 2015, defendant filed a response to plaintiff's motion to

---

[31]  Docket no. 39.

[32]  Docket no. 40.

[33]  Docket no. 41.

[34]  Docket no. 42.

[35]  Docket no. 43.

[36]  Docket no. 44.

[37]  Docket no. 46.

[38]  Docket no. 48.

[39]  Docket no. 50.

[40]  Docket no. 49.

"dismiss" defendant's motion to strike.[41]

### III.  STATEMENT OF THE CASE

Unless otherwise noted, the parties do not appear to dispute certain of the following facts which are set out to provide a factual background and context for the legal issues addressed in this ruling:  On March 30, 2015, plaintiff was an inmate housed at BCADC.  Plaintiff and Deputy Rodriguez agree that plaintiff was involved in an incident in which plaintiff's left arm and left leg were caught between the cell door and the side of the cell.  Plaintiff claims Deputy Rodriguez acted intentionally and maliciously to cause him harm; Deputy Rodriguez denies intent to harm plaintiff and claims any contact between the cell door and plaintiff was an accident.  Plaintiff claims he suffered injuries as a result of the incident; deputy Rodriguez claims any injuries suffered by plaintiff were *de minimis*.

### IV. ISSUES

1.    Whether defendant's motion for summary judgment should be granted or denied.

2.    Whether plaintiff's motion or corrected motion for summary judgment should be granted or denied.

3.    Whether plaintiff's motion to amend complaint should be granted or denied.

4.    Whether defendant's motions to strike plaintiff's discovery requests and corrected motion for summary judgment be granted or denied.

5.    Whether plaintiff's motion to dismiss defendant's motion to strike should be granted or denied.

6.    Whether any other motions or requests for relief should be granted or denied.

---

[41]  Docket no. 51.

# V.  STANDARDS

## A.    Rule 56 of the Federal Rules of Civil Procedure

The standard to be applied in deciding a motion for summary judgment is set forth in

Rule 56 of the Federal Rules of Civil Procedure, which provides in pertinent part as follows:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[42]

Mere allegations of a factual dispute between the parties will not defeat an otherwise proper

motion for summary judgment.  Rule 56 requires that there be no genuine issue of material fact.[43]

A fact is material if it might affect the outcome of the lawsuit under the governing law.[44]  A

dispute about a material fact is genuine if the evidence is such that a reasonable jury could return

a verdict for the nonmoving party.[45]  Therefore, summary judgment is proper if, under governing

laws, there is only one reasonable conclusion as to the verdict; if reasonable finders of fact could

resolve a factual issue in favor of either party, summary judgment should not be granted.[46]

The movant on a summary judgment motion bears the initial burden of providing the

court with a legal basis for its motion and identifying those portions of the record which it alleges

---

[42] FED. R. CIV. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).

[43] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2510 (1986).

[44] Id. at 248, 106 S.Ct. at 2510; Thomas v. LTV Corp., 39 F.3d 611, 616 (5th Cir. 1994).

[45] Anderson, 477 U.S. at 248, 106 S.Ct. at 2510; Wise v. E.I. DuPont De Nemours & Co., 58 F.3d 193, 195 (5th Cir. 1995).

[46] Anderson, 477 U.S. at 249, 106 S.Ct. at 2510.

demonstrate the absence of a genuine issue of material fact.[47]  The burden then shifts to the party

opposing the motion to present affirmative evidence to defeat a properly supported motion for

summary judgment.[48]  All facts and inferences drawn from those facts must be viewed in the

light favorable to the party resisting the motion for summary judgment.[49]  "The court need

---

[47]  Fed. R. Civ. P. 56(c)(1) provides:
Supporting Factual Positions.  A party asserting that a fact cannot be or is
genuinely disputed must support the assertion by:
> (A)  citing to particular parts of materials in the record, including
> depositions, documents, electronically stored information, affidavits or
> declarations, stipulations (including those made for purposes of the motion
> only), admissions, interrogatory answers, or other materials; or
> (B)  showing that the materials cited do not establish the absence or
> presence of a genuine dispute, or that an adverse party cannot produce
> admissible evidence to support the fact.
Fed. R. Civ. P. 56(c)(1).  See also Celotex, 477 U.S. at 323, 106 S.Ct. at 2552-53.

[48]  Anderson, 477 U.S. at 257, 106 S.Ct. at 2514-15.

[49]  Scott v. Harris, 550 U.S. 372, 378, 127 S.Ct. 1769, 1774 (2007); Hibernia Nat'l Bank
v. Carner, 997 F.2d 94, 97 (5th Cir. 1993).  The Supreme Court explained in Scott that:
> At the summary judgment stage, facts must be viewed in the light most favorable
> to the nonmoving party only if there is a 'genuine' dispute as to [the] facts.  As we
> have emphasized,  "[w]hen the moving party has carried its burden under Rule
> 56(c), its opponent must do more than simply show that there is some
> metaphysical doubt as to the material facts. . . Where the record taken as a whole
> could not lead a rational trier of fact to find for the nonmoving party, there is no
> 'genuine issue for trial.'"  "The mere existence of some alleged factual dispute
> between the parties will not defeat an otherwise properly supported motion for
> summary judgment; the requirement is that there be no genuine issue of material
> fact."  "When opposing parties tell two different stories, one of which is blatantly
> contradicted by the record, so that no reasonable jury could believe it, a court
> should not adopt that version of the facts for purposes of ruling on a motion for
> summary judgment."
550 U.S. at 380, 127 S.Ct. at 1776 (emphasis in original) (quoting FED. R. CIV. P. 56(c);
Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356
(1986); Anderson, 477 U.S. at 247-48, 106 S.Ct. at 2510).

consider only the cited materials, but it may consider other materials in the record."[50]  Summary judgment motions permit the Court to resolve a lawsuit without the necessity of a trial if there is no genuine dispute as to any material facts and the moving party is entitled to judgment as a matter of law.[51]  "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."[52]

If "the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by showing – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."[53]  The movant "must demonstrate the absence of a genuine issue of material fact, but does not have "to negate the elements of the nonmovant's case."[54]  "If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response."[55]  On the other hand, if the movant meets its burden and the non-movant cannot provide some evidence to support its claim, summary judgment is appropriate.[56]  The Court may enter an order that does not grant all the

---

[50]  FED. R. CIV. P. 56(c)(3).

[51]  See Fields v. City of South Houston, Tex., 922 F.2d 1183, 1187 (5th Cir. 1991).

[52]  FED. R. CIV. P. 56(c)(2).

[53]  Duffie v. United States, 600 F.3d 362, 371 (5th Cir.) (citing Celotex, 477 U.S. at 325, 106 S.Ct. at 2554) (internal punctuation omitted), cert. denied __ U.S. __, 131 S.Ct. 355 (2010).

[54]  Duffie, 600 F.2d at 371; Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005).

[55]  Quorum Health Res., L.L.C. v. Maverick County Hosp. Dist., 308 F.3d 451, 471 (5th Cir. 2002) (citing Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

[56]  FED. R. CIV. P. 56(e); Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 263 (5th Cir.), cert. denied, 537 U.S. 824, 123 S.Ct. 111 (2002).

relief requested by the motion, but states that "any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case."[57]

If the nonmovant cannot adequately defend against a motion for summary judgment, the remedy is a motion for relief under Rule 56(d), which provides:

> (d)  When Facts Are Unavailable to the Nonmovant.  If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1)  defer considering the motion or deny it;
> (2)  allow time to obtain affidavits or declarations or to take discovery; or
> (3)  issue any other appropriate order.[58]

Discovery motions under Rule 56(d) are "broadly favored and should be liberally granted because the rule is designed to safeguard non-moving parties from summary judgment motions that they cannot adequately oppose."[59]  To be entitled to a continuance of a summary judgment proceeding to obtain further discovery prior to a ruling on a motion for summary judgment, the party opposing the motion must demonstrate how additional time and discovery will enable the party to rebut the movant's allegations there are no genuine issues of material fact.[60]

---

[57] FED. R. CIV. P. 56(g).

[58] See FED. R. CIV. P. 56(d).

[59] Raby v. Livingston, 600 F.3d 552, 561 (5th Cir. 2010) (discussing Rule 56(f)) (internal punctuation omitted); Culwell v. City of Fort Worth, 468 F.3d 868, 871 (5th Cir. 2006) (same); International Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1267 (5th Cir. 1991) (explaining that under Rule 56(f), "[w]here the party opposing the summary judgment informs the court that its diligent efforts to obtain evidence from the moving party have been unsuccessful, a continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course.") (citation and internal punctuation omitted), cert. denied, 502 U.S. 1059, 112 S. Ct. 936 (1992); see also Sapp v. Memorial Hermann Healthcare Sys., 406 Fed. A'ppx 866, 869 (5th Cir. 2010).

[60] See Raby, 600 F.3d at 561 (request for stay "must set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably

**B.      Section 1983**

Section 1983 does not create any substantive rights, but instead provides a remedy for

violations of federal statutory and constitutional rights.[61]  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress.[62]

To state a cause of action under § 1983, a plaintiff's claim for relief must allege facts establishing

that: (1) plaintiff has been deprived of a right secured by the Constitution or laws of the United

States; and (2) defendant acted under color of state law.[63]  The United States Court of Appeals

for the Fifth Circuit has held that "section 1983 imposes liability for violations of rights secured

by the Constitution, not violations of duties of care arising out of tort law."[64]

**C.      Qualified Immunity**

Qualified immunity shields certain public officials performing discretionary functions

from civil damage liability if their actions could reasonably have been thought consistent with the

---

exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending
summary judgment motion") (citations and internal punctuation omitted).

[61]  LaFleur v. Tex. Dep't of Health, 126 F.3d 758, 759 (5th Cir. 1997); Jackson v. City of
Atlanta, Tex., 73 F.3d 60, 63 (5th Cir.), cert. denied, 519 U.S. 818, 117 S. Ct. 70 (1996).

[62]  42 U.S.C. § 1983.

[63]  Doe ex rel. Magee v. Covington Cnty. Sch. Dist., 675 F.3d 849, 854 (5th Cir. 2012);
Randolph v. Cervantes, 130 F.3d 727, 730 (5th Cir. 1997); cert. denied, 525 U.S. 822, 119 S. Ct.
65 (1998); Fyfe v. Curlee, 902 F.2d 401, 403 (5th Cir. 1990); Wong v. Stripling, 881 F.2d 200,
202 (5th Cir. 1989).

[64]  Lynch v. Cannatella, 810 F.2d 1363, 1375 (5th Cir. 1987).

rights they are alleged to have violated.[65]  Once a defendant raises the qualified immunity

defense, "*plaintiff* has the burden to rebut" the defense.[66]  Whether a defendant is entitled to

immunity from suit as a result of qualified immunity is a two step inquiry: (1) whether the

plaintiff has alleged a violation of a clearly established constitutional right; and (2) if so, whether

plaintiff has raised a genuine issue of material fact that the defendant's conduct was objectively

unreasonable in light of clearly established law at the time of the incident.[67]

 "Clearly established" means that the "contours of the right must be sufficiently clear that

a reasonable official would understand that what he is doing violates that right."[68]  "[L]ower

courts are 'permitted to exercise their sound discretion in deciding which of the two prongs of the

qualified immunity analysis should be addressed first in light of the circumstances of the

particular case at hand.'"[69]  "Even if a defendant's conduct actually violates a plaintiff's

constitutional right, the defendant is entitled to qualified immunity if the conduct was objectively

reasonable."[70]

---

[65]  Duckett v. City of Cedar Park, 950 F.2d 272, 279 (5th Cir. 1992).

[66]  Austin v. Johnson, 328 F.3d 204, 208 n. 6 (5th Cir. 2003); Thompson v. Upshur Cnty., Tex., 245 F.3d 447, 456 (5th Cir. 2001); Pierce v. Smith, 117 F.3d 866, 871-72 (5th Cir. 1997).

[67]  Michalik v. Hermann, 422 F.3d 252, 257-58 (5th Cir. 2005); Jacobs v. W. Feliciana Sheriff's Dept., 228 F.3d 388, 393 (5th Cir. 2000) (citing Hare v. City of Corinth, 135 F.3d 320, 325 (5th Cir. 1998)).

[68]  Anderson v. Creighton, 483 U.S. 635, 640 , 107 S. Ct. 3034, 3039 (1987); Michalik, 422 F.3d at 258; Thompson, 245 F.3d at 457.

[69]  Collier v. Montgomery, 569 F.3d 214, 217-18 (5th Cir. 2009) (quoting Pearson v. Callahan, 555 U.S. 223, 241-42, 129 S. Ct. 808, 821 (2009)).

[70]  Duckett, 950 F.2d at 280.

14

The Fifth Circuit has encouraged the district courts to require highly fact-specific pleadings by a plaintiff in a § 1983 lawsuit who attempts to overcome a plea of qualified immunity.[71] "'[P]laintiffs must demonstrate prior to discovery that their allegations are sufficiently fact-specific to remove the cloak of protection afforded by an immunity defense.' A complaint which raises the likely issue of immunity cannot be cast in 'broad, indefinite and conclusory terms,' but must include detailed facts supporting the contention that the plea of immunity cannot be sustained."[72]  "Qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"[73]  "Qualified immunity purposefully shields police officers' split-second decisions made without clear guidance from legal rulings."[74]

## D.    Denial of Medical Care

To establish a civil rights claim for the denial of medical care, a prisoner must allege and prove the prison authorities were deliberately indifferent to the prisoner's serious medical needs.[75]  A prison official may be liable under the Eighth Amendment for deliberate indifference to prison health and safety conditions only if he knows an inmate faces a substantial risk of

---

[71] Hick v. Bexar Cnty., Tex., 973 F. Supp. 653, 673 (W.D. Tex. 1997) (citations omitted), aff'd, 137 F.3d 1352 (5th Cir. 1998).

[72] Hick, 973 F. Supp. at 673 (citations omitted).  See also Baker v. Putnal, 75 F.3d 190, 195 (5th Cir. 1996).

[73] Pasco v. Knoblauch, 566 F.3d 572, 579-82 (5th Cir. 2009) (quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986)).

[74] Id. at 582.

[75] Estelle v. Gamble, 429 U.S. 97, 104-05, 97 S.Ct. 285, 291 (1978).

serious harm and disregards that risk by failing to take reasonable measures to abate it.[76]  In

Domino v. Texas Department of Criminal Justice,[77] the Fifth Circuit described the "deliberate

indifference" standard as follows:

> Deliberate indifference is an extremely high standard to meet.  It is indisputable
> that an incorrect diagnosis by prison medical personnel does not suffice to state a
> claim for deliberate indifference.  Rather, the plaintiff must show that the officials
> 'refused to treat him, ignored his complaints, intentionally treated him incorrectly,
> or engaged in any similar conduct that would clearly evince a wanton disregard
> for any serious medical needs.'  Furthermore, the decision whether to provide
> additional treatment 'is a classic example of a matter for medical judgment.' And,
> the 'failure to alleviate a significant risk that [the official] should have perceived,
> but did not' is insufficient to show deliberate indifference.[78]

Negligence is not a basis for a civil rights action under Section 1983,[79] and "[m]edical

malpractice does not become a constitutional violation merely because the victim is a prisoner."[80]

Disagreement with a physician's course of treatment is not a basis for a Section 1983 civil rights

claim,[81] and likewise "[u]nsuccessful medical treatment does not give rise to a Section 1983

cause of action."[82]  The Fifth Circuit has recognized that there is no significant distinction

between pretrial detainees and convicted inmates concerning basic human needs such as medical

care, and consequently the analysis applicable to the claims of pretrial detainees and convicted

---

[76] Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970, 1984 (1994).

[77] 239 F.3d 752 (5th Cir. 2001).

[78] Id. at 756.

[79] See Daniels v. Williams, 474 U.S. 327, 329-336, 106 S.Ct. 662, 664-667 (1986).

[80] Estelle, 429 U.S. at 106, 97 S.Ct. at 292.

[81] See Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997).

[82] Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991).

prisoners is the same.[83]

## VI. ANALYSIS

**A.     Deputy Rodriguez's Motion for Summary Judgment**

**1.     excessive force**

Deputy Rodriguez moves for summary judgment on plaintiff's excessive force claim asserted against him on three main grounds: (1) "the incident in question was a lawful use of force and there was no intent to cause Plaintiff bodily harm;"[84] (2)"Plaintiff's injury is clearly *de minimis*;"[85] and (3) "Plaintiff's injuries show that the force applied by Deputy Rodriguez is not sufficient to be 'repugnant to the conscience.'"[86]  Plaintiff, opposing summary judgment and moving for summary judgment himself, argues the use of "excessive force" was "not an accident"[87] and his "alleged injuries are more than *de minimis*."[88]

---

[83]   See Hare v. City of Corinth, 74 F.3d 633, 643 (5th Cir. 1996) (en banc).

[84]   Docket no. 35 at 4.

[85]   Id. at 5.

[86]   Id.

[87]   Docket no. 38 at 3.

[88]   Id. at 2.  As a preliminary matter, there are three important differences between the record reviewed in connection with this ruling and the state of the record at the time of the Court's July 29, 2015 ruling to deny defendant's motion to dismiss plaintiff's excessive use of force claim (construed as a motion for summary judgment).  First, this ruling expressly cites and applies the June 22, 2015 decision in Kingsley.  Second, this ruling is entered after both sides had an opportunity for discovery.  Third, this ruling considers new evidence submitted by both sides.  Specifically, this ruling not only considers plaintiff's medical records, submitted in support of defendant's earlier motion to dismiss with an authenticating affidavit from the custodian of the records, but also the affidavit from Darryl B. Thomas, M.D., a board certified orthopedic surgeon, who provides opinion testimony based on his review of plaintiff's treatment records.

To prevail on an excessive force claim, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable."[89]  The following six nonexclusive factors "bear on the reasonableness or unreasonableness of the force used:"

(1)   the relationship between the need for the use of force and the amount of force used;
(2)   the extent of the plaintiff's injury;
(3)   any effort made by the officer to temper or to limit the amount of force;
(4)   the severity of the security problem at issue;
(5)   the threat reasonably perceived by the officers; and
(6)   whether the plaintiff was actively resisting.[90]

The Court must also consider the reasonableness of the defendant's use of force "from the perspective and with the knowledge of the defendant officer" and in "deference to policies and practices needed to maintain order and institutional security."[91]

Although the central consideration in this ruling concerns defendant's contention that plaintiff's injuries are de minimis, the Court briefly reviews the summary judgment argument and evidence as to other Kingsley/Hudson factors.  With respect to whether plaintiff was actively resisting and the need for the use of some force, Brown does not contest that Deputy Rodriguez

---

[89]  Kingsley, 135 S.Ct. at 2473.

[90]  Id.  During the pendency of this action, the Supreme Court held, in Kingsley, that an objective reasonableness standard applies to pretrial detainee's excessive force claims under the Fourteenth Amendment. 135 S.Ct. at 2473.  Prior to Kingsley, Hudson stated that the "core judicial injury" was "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  503 U.S. at 7, 112 S.Ct. at 999.  Hudson's requirement that the "pretrial detainee must show that the officers were *subjectively* aware that their use of force was unreasonable," is no longer applicable to a pretrial detainee's excessive force claim.  Kingsley, 135 S.Ct. at 2470 (emphasis in original).  Rather, "a pretrial detainee must show only that the force purposefully or knowingly used against him was objectively unreasonable." Id. at 2473, 75.  To be clear, the "[f]ive Hudson factors (see Benoit, 596 Fed. App'x at 267) are included in the six factors for consideration identified in Kingsley.

[91]  Kingsley, 135 S.Ct. at 2475.

"instructed the inmates" to "rack up" pursuant to BCADC procedures, "which require the

inmates to return to their cells," and plaintiff "attempted to exit the cell which violated [Deputy

Rodriguez's] order."[92]  Plaintiff confirms he "was exit[ing] his cell," does not specifically contest

that he was acting in defiance of Deputy Rodriguez's order, and provides no evidence to justify

his refusal to obey the order.[93]  Plaintiff also does not dispute that Deputy Rodriguez's order was

lawful or that Deputy Rodriguez's order was made pursuant to BCADC policy.  The "use of

force is permissible in a variety of situations, not only when it is necessary to protect oneself

from an imminent physical attack by an inmate."[94]  "Inmates cannot be permitted to decide which

orders they will obey, and when they will obey them."[95]  "If it is an order that requires action by

the institution, and the inmate cannot be persuaded to obey the order, some means must be used

to compel compliance, such as a chemical agent or physical force."[96]  Plaintiff does not rebut

Deputy Rodriguez's evidence that there was a justification for the use of some force.  Thus, the

summary judgment record demonstrates that plaintiff's conduct "set the stage for the use of

---

[92] Docket no. 35-1 at 1. Plaintiff's additional summary judgment evidence, an affidavit of fellow inmate Hakeem Hampton, also fails to rebut that Deputy Rodriguez ordered the inmates to return to their cells.  Docket no. 38-2.

[93] See Rooks v. Does, No. 4:14-CV-149-DPM-JTK, 2015 WL 3954225, at *4 (E.D. Ark. June 29, 2015), appeal dismissed (Nov. 17, 2015) (plaintiff did not deny that he refused to obey Defendant's numerous verbal commands to allow him to remove the cuffs. Plaintiff provided no specific facts or evidence to justify his refusal, and even assuming his version of the facts as true (that he did not lunge at Defendant Ragland), the Court finds Ragland's use of force (single burst of taser) to be more than reasonable, given all the circumstances).

[94] Brown v. Gusman, No. 15-1491-DEK, 2015 WL 6827260, *5 (E.D. La. Nov. 6, 2015).

[95] Kitt v. Bailey, 2015 WL 3909116,*6 (S.D. Tex. June 24, 2015) (quoting Soto v. Dickey, 744 F.2d 1260, 1267 (7th Cir. 1984)).

[96] Id.

force."[97]

Against this backdrop, the summary judgment record shows the parties dispute facts relevant to an assessment of the relationship between the need for the application of force and the amount of force used, as well as the extent of plaintiff's injury. Deputy Rodriguez testifies in his affidavit that, after the order was given to return to his cell, plaintiff "attempted to exit the cell," "position[ed] his arm and leg between the door and door frame," and "attempted to push the cell door open."[98] Deputy Rodriguez further testifies he "held the door in position and put my foot against the door to prevent Mr. Brown from opening the door further."[99] Then, plaintiff removed his arm and leg and Deputy Rodriguez "shut the door and it locked automatically. Mr. Brown did not cry out in pain, tell me he was injured or give me any other indication that he was injured."[100] In contrast, Brown testifies in his sworn complaint that Deputy Rodriguez "slammed the cell door on the left side of my body (repeatedly)" and "assaulted me using 'excessive force' for about twenty five (25) to thirty (30) seconds by backing up then lunging forward, ramming the cell door with the left side of his body while my body (was not) clear of the cell door."[101] As

---

[97] <u>Calhoun v. Wyatt</u>, No. 6:11CV4, 2013 WL 1882367, *6 (E.D. Tex. 2013).

[98] Docket no. 35-1 at 1.

[99] <u>Id.</u>

[100] <u>Id.</u> at 2.

[101] Docket no. 1 at 4. Plaintiff's depiction of the incident varies. In his March 30, 2015 grievance, attached as an exhibit to his complaint, plaintiff states Deputy Rodriguez "slamm[ed] the cell door on my left arm and left leg, then placed all of his weight against the door so that my left arm and left leg remained pinned." <u>Id.</u> at 7. According to plaintiff's medical records, on March 31, 2015, plaintiff stated, "he was hurt last night by the door his left arm and leg were pinned on the door by an officer applying force to door squeezing his two left extremities." Docket no. 8-1 at 2. In neither place, is there a reference to plaintiff complaining of repeated

a result of defendant's use of force, plaintiff testifies he suffered "a serious knee injury and bruises and lacerations on my left arm."[102]

Although excessive force claims are to be decided "based on the nature of the force rather than the extent of the injury,"[103] such that an inmate who was "gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury,"[104] here Deputy Rodriguez denies intentionally and knowingly applying any force to injure plaintiff, denies even knowing plaintiff claimed injury at the time of the occurrence,[105] and the summary judgment record as to the extent of plaintiff's injuries, a factor properly considered under Kinglsey/Hudson, shows plaintiff's injuries were *de minimis*.

Notwithstanding the guidance in Brown v. Lynch—"as long as a plaintiff has suffered 'some injury,' even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force"[106]—the Fifth Circuit has not disallowed entry of summary judgment based on *de minimis* injuries when Courts have found there is no genuine issue of material fact that injuries are *de minimis* "in the context of the force used."[107]  There are numerous cases in which the Fifth Circuit has affirmed the entry of

---

slamming or lunging.

[102]   Id. at 4.

[103]   Wilkins v. Gaddy, 559 U.S. 34, 35-36, 130 S.Ct. 1175, 1177 (2010).

[104]   559 U. S. at 36-38, 130 S. Ct. at 1178-79.

[105]   Docket no. 35-1 at 2.

[106]   524 Fed. App'x. 69,79 (5th Cir. 2013).

[107]   Glenn v. City of Tyler, 242 F.3d 307, 314 (5th Cir. 2001) (citations omitted) (finding plaintiff's injury "must be more than a *de minimis* injury and must be evaluated in the context in

summary judgment based on a summary judgment record showing only a *de minimis* injury.[108]

For example, as recently as February 6, 2016 (and after Kinglsey), in Brooks v. City of West

Point, Miss., the Fifth Circuit held that "[b]ecause Brooks has not proffered evidence that the

officers caused him more than a *de minimis* injury, the district court did not err in granting

summary judgment on his excessive force claim" based the summary judgment record that

showed Brooks "suffered abrasions to his hands and knees, some pain in his back and neck, and

unspecified problems with his asthma," adding that "[w]e have held injuries of this type to be *de*

---

which the force was deployed" and officer handcuffing the plaintiff "too tightly, causing her right
wrist to swell," without more, did not amount to excessive force).

[108] See Galada v. Payne, 421 Fed.App'x. 460, 462 (5th Cir. 2011) (affirming summary
judgment and holding "[a]lthough a showing of 'significant injury' is not necessary, we require
that the plaintiff have suffered at least some form of injury that is more than *de minimis*"); Lee v.
Wilson, 237 Fed.App'x. 965, 966 (5th Cir. 2007) (affirming summary judgment that found
prisoner's injury to be *de minimis*, consisting of a "busted lip" in the context of officer's
"reasonable attempt to maintain order" in response to prisoner's complaints); Wilson v. Taylor,
100 Fed.App'x. 282, 283 (5th Cir. 2004) (affirming district court's grant of summary judgment
on the basis of qualified immunity because prisoner "failed to submit summary judgment
evidence showing that he has suffered a more than *de minimis* physical injury" after being "body
slammed onto a concrete floor and punched in the face" by an officer who was over seven feet
tall and weighed more than 300 pounds); Bradshaw v. Unknown Lieutenant, 48 Fed.App'x. 106
(5th Cir. 2002) (affirming district court's dismissal of prisoner's excessive force claim when
alleged injuries consisting of "burning eyes and skin for approximately 24 hours, twitching of his
eyes, blurred vision, irritation of his nose and throat, blistering of his skin, rapid heartbeat,
mental anguish, shock and fear" were *de minimis*); Potts v. Hill, 182 F.3d 913 (5th Cir. 1999)
(affirming the district court's  grant of summary judgment because plaintiff's injury of a
"nonbleeding cut on the inside" of prisoner's lip that made "his mouth too sore to wear his
dentures for three weeks," was not the "kind of injury that warranted Eighth Amendment
protection"); Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997) (affirming district court's
dismissal of plaintiff's claims for excessive force where injury consisting of "a sore, bruised ear
lasting for three days" was *de minimis*); Young v. Saint, No. 92-8420, 1993 WL 117991, at *3
(5th Cir. Mar. 31,1993) (affirming order dismissing complaint where injuries consisting of "an
undetermined amount of blood and [] two small 'scratches'" were *de minimis*).

*minimis.*[109]

Deputy Rodriguez's summary judgment evidence includes an affidavit from Darryl B. Thomas, M.D., a board certified orthopedic surgeon, who reviewed plaintiff's medical treatment records relating to the March 30, 2015 incident.[110]  Brown was seen for medical evaluation on March 31, 2015—less than 24 hours after the incident.[111]  The treatment notes reflect that Brown stated he "was hurt last night by the door his left arm and leg were pinned on the door by an officer applying force to the door squeezing his two left extremities."[112]  Plaintiff complained of pain to his left elbow and left knee, but the treatment notes state "no bruising seen on left elbow and arm, on the left forearm [sic] there is two approximately 8 cm long scratch like lines, no edema noted."[113]  The medical records do not indicate any medication was prescribed to plaintiff on March 31, 2015.[114]  Dr. Thomas testifies that "the only objective evidence of an injury is at the left upper extremity given the very mild lacerations present,"[115] "[t]here is no objective evidence of an injury to the left knee,"[116] and after the incident Brown showed evidence only of "a

---

[109] No. 14-60357, 2016 WL 556360, *3 (5th Cir. Feb. 11, 2016) (citations omitted).

[110] Docket no. 35-2.

[111] Docket no. 8-1 at 2.

[112] Id.

[113] Id.

[114] Plaintiff states after the examination, the nurse "gave me an ice pack for my knee and released me."  Docket no. 1 at 5. There is no reference in plaintiff's medical treatment records to plaintiff receiving an ice pack—or any other treatment—on March 31, 2015.

[115] Docket no. 35-2 at 3.

[116] Id.  Dr. Thomas opines "[a]ny subjective complaints of pain in this region are consistent with a prior injury."  Id. at 2.  Plaintiff confirms he suffered from a prior knee injury,

contusion and a very mild laceration injury to the upper left extremity as a result of the described mechanism of injury."[117]

The Court cannot say that the objective medical evidence of plaintiff's injury within 24 hours of the incident—"two approximately 8 cm long scratch like lines" on plaintiff's left arm with no bleeding, bruising or swelling noted on plaintiff's left arm or left leg—equates to more than a *de minimis* injury.[118]  Although *de minimis* injury does not necessarily equate to the *de minimis* level of force,[119] here plaintiff provides no summary judgment evidence sufficient to

---

arguing after the incident he "has been in pain result[ing] from defendant's assault using excessive force also the re-injuring plaintiff's knee which plaintiff suffered in an auto accident in May of 2014."  Docket no. 38 at 3 (emphasis added).  Dr. Thomas states the "radiographs of the left knee and elbow were negative for any evidence of trauma."  Docket no. 35-2 at 2.  Dr. Thomas opines plaintiff's "prognosis is excellent" and "[t]here would be no expected long term issues from a contusion injury."  Docket no. 35-2 at 3.

[117]  Docket no. 35-2 at 2.

[118]  Dr. Thomas also discusses post-event medical attention of Brown.  Plaintiff was seen for evaluation on April 3, 2015 because plaintiff complained of tenderness to the left elbow and left knee when palpated.  Docket no. 9-1 at 3-4.  Nothing unusual was noted in the appearance of either limb and the left elbow specifically "without swelling."  Docket no. 35-2 at 2.  Plaintiff was prescribed Indomethacin (nonsteroidal anti-inflammatory).  Id.  Plaintiff was seen next on April 7, 2015, when x-rays were taken of plaintiff's left elbow ("no fracture or dislocation") and left knee ("no fracture or dislocation;" "small joint effusion") and plaintiff was prescribed Baclofen (muscle relaxer), Ibuprofen, and directed to "[a]llow warm shower water to run to all affected joints."  Docket no. 9-1 at 5.  Dr. Thomas directly testifies "[t]he radiographs of the left knee and elbow were negative for any evidence of trauma."  Docket no. 35-2 at 2.  There is no summary judgment evidence that relates plaintiff's post-March 31, 2015 complaints to treatment providers to the March 30 incident other than plaintiff's implicit contention they were.  Nevertheless, even if the medical complaints for which plaintiff received treatment after March 31 and through April 7, 2015 as reflected in the medical records were to be considered related to the March 30 use of force, plaintiff's injuries remain *de minimis*.

[119]  The extent of the injury may "provide some indication of the amount of force applied," may "suggest whether the use of force could plausibly have been thought necessary," and "not every malevolent touch by a prison guard gives rise to a federal cause of action."  Wilkins v. Gaddy, 559 U.S. 34, 38, 130 S.Ct. 1175, 1178 (2010) (citations omitted).  That the

raise a genuine issue of fact to show why, within 24 hours of the incident, there was not any

evidence in his medical treatment records of injuries other than  "two approximately 8 cm long

scratch like lines" on plaintiff's left arm (with no bleeding, bruising or swelling noted on

plaintiff's left arm or left leg) if the force used against him was not also *de minimis*.  Plaintiff has

not presented competent summary judgment evidence sufficient to raise a genuine issue of

material that his injuries were other than *de minimis*.[120]  No reasonable juror could conclude other

than that Brown's injuries were *de minimis*.  No reasonable juror could conclude other than that

the force purposefully and knowingly used against Brown by Deputy Rodriguez was other than

*de minimis*.[121]

---

evidence shows plaintiff's injuries were *de minimis* supports the finding the force used was not
excessive.

[120]  See cases cited in notes 107-109, above.

[121]  With respect to the remaining Hudson/Kinglsey factors, Deputy Rodriguez offers no
argument as to any efforts to temper the severity of the force used, other than characterizing the
entire incident as an "accident."  The Court may consider the nature of the injury to "indicate that
the response was tempered to some extent."  Thompson v. Beasely, 309 F.R.D. 236, 249 (N.D.
Miss. 2015) (citations omitted).  This factor does not weigh in favor of finding that Deputy
Rodriguez's use of force was unreasonable.  Only Deputy Rodriguez has presented summary
judgment evidence related to the severity of the security problem at issue and the threat
reasonably perceived by the officers.  Deputy Rodriguez testified he ordered inmates to "rack up
so I could count the meal trays" because "[a]ll trays, sporks and inmates must be accounted for at
meal times because the trays and sporks could be fashioned into weapons."  Docket no. 35-1 at 1.
To force plaintiff's compliance with Deputy Rodriguez's lawful order made pursuant to BCADC
security policy, Deputy Rodriguez responded to plaintiff's defiant exiting of his cell by holding
"the door in position" and"prevent[ing] Mr. Brown from opening the door further."  Id. at 2.
"Inmates do not have the right to cause disturbances creating a security problem nor to comply
with orders from jail officials."  Calhoun, 2013 WL 1882367, at *6.  "[M]aintaining institutional
security and preserving internal order and discipline are essential goals that may require
limitation or retraction of the retained constitutional rights of both convicted prisoners and
pretrial detainees."  Bell v. Wolfish, 441 U.S. 520, 546, 99 S.Ct. 1861, 1878 (1979).  Maintaining
institutional security required Deputy Rodriguez to limit plaintiff's ability to leave his cell.  See
Poole v. City of Shreveport, 691 F.3d 624, 629 (5th Cir. 2012) (arrestee or suspect who refuses to

In sum, Deputy Rodriguez's motion for summary judgment on plaintiff's excessive use of force claim is **granted** and plaintiff's claim is **dismissed**.

### 2.      Denial of Medical Care

Deputy Rodriguez moves for summary judgment on plaintiff's denial of medical care claim arguing he was "not aware that Plaintiff was in need of or requested medical care on the date of the incident" and "even if he was aware, medical care for a minor injury is not actionable."[122]  Plaintiff does not present any specific rebuttal argument or evidence.[123]

To state a claim for the denial of medical care, as a pretrial detainee, plaintiff must show that Deputy Rodriguez acted "with deliberate indifference to a substantial risk of serious medical harm and resulting injuries."[124]  In his affidavit, Officer Rodriguez states plaintiff "never informed me that he was injured or requested medical care prior to the end of my shift," "never requested a sick call slip from me or submitted a sick call slip to me at any time relevant to his lawsuit," and "I did not observe any behavior from Mr. Brown that indicated he was injured."[125] In rebuttal, plaintiff states in his affidavit that he "requested medical care" and "ask[ed] the

---

comply with officers' commands poses an immediate threat to the safety of the officers such that use of force was not clearly excessive); Galvan v. City of San Antonio, 435 Fed. App'x. 309, 311 (5th Cir. 2010) (explaining the use of force was reasonable "when officers reacted with measured and ascending responses" to a plaintiff's noncompliance).

[122]   Docket no. 35 at 5.

[123]   See docket no. 38.

[124]   Mace v. City of Palestine, 333 F.3d 621, 625-626 (5th Cir. 2003) ("Deliberate indifference requires the official have subjective knowledge of the risk of harm. [] Mere negligence or a failure to act is not enough. The officer must have the subjective intent to cause harm.")

[125]   Docket no. 35-1 at 2.

officer to call in a code one (which is a medical emergency code for BCADC)," which Deputy Rodriguez refused.[126]

Deputy Rodriguez's motion for summary judgment on plaintiff's denial of medical care claim is granted because "viewing the facts in the light most favorable to [plaintiff], no reasonable jury could find deliberate indifference," that is, Deputy Rodriguez had "subjective knowledge of the risk of harm" and "subjective intent to cause harm"[127] when plaintiff's only reported injuries on March 31, 2015—less than 24 hours after the incident—were "two approximately 8 cm long scratch like lines," with no bleeding, bruising, or swelling noted.[128] Deputy Rodriguez is also entitled to an entry of summary judgment because plaintiff has not presented sufficient summary judgment to show Deputy Rodriguez "intentionally delayed" plaintiff's care to cause harm.  Accordingly, Deputy Rodriguez's motion for summary judgment as to plaintiff's denial of medical care claim is **granted** and plaintiff's claim is **dismissed with prejudice**.

### 3.    Qualified Immunity

For the reasons stated above, plaintiff has not raised a genuine issue of material fact to show that Deputy Rodriguez's conduct was objectively unreasonable in light of clearly established law at the time of the incident.[129]  Accordingly, Deputy Rodriguez's motion for summary judgment is **granted** and plaintiff's claims against Deputy Rodriguez for excessive use

---

[126]  Docket no. 38-1 at 2.

[127]  See Mace, 333 F.3d at 625-26.

[128]  Docket no. 8-1 at 2.

[129]  See Michalik, 422 F.3d at 257-58.

of force and denial of medical care are **dismissed with prejudiced**.

**B.      Plaintiff's Motion for Summary Judgment**

Plaintiff's motion for summary judgment, also considered as plaintiff's response to defendant's motion for summary judgment, seeks entry of judgment as a matter of law on each of the claims at issue in Deputy Rodriguez's motion for summary judgment.[130]  The Court has fully considered plaintiff's motion for summary judgment, as an independent motion for summary judgment and as a response to Deputy Rodriguez's motion for summary judgment.  Plaintiff has also filed a corrected motion for summary judgment, which is addressed below.  For the reasons that Deputy Rodriguez's motion for summary judgment is granted, plaintiff's motion is **denied**.

**C.      Other Motions, Requests for Relief, and Objections**

In addition to defendant's motion for summary judgment and plaintiff's motion for summary judgment, the parties have sought relief in other submissions.  This portion of the Memorandum Decision and Order briefly addresses those submissions.

**1.      plaintiff's motion to amend complaint**

On February 25, 2016, plaintiff filed a motion to file an amended complaint in which plaintiff seeks to assert claims against the BCADC and Bexar County Sheriff Pamerleau.[131]  Plaintiff's motion acknowledges that in 2015 he filed documents showing he "no longer wished to pursue a claim against BCADC," but states he "now [can] allege the requisite custom practice and policy as a basis for liability against BCADC and Sheriff Pamerleau."[132]  Plaintiff does not

---

[130]  Docket no. 38 at 4.

[131]  Docket no. 43.

[132]  Id. at 2.

attach a copy of his proposed amended complaint to his motion to amend, in violation of the

Local Court Rule CV-7(b),[133] nor does his motion specify the alleged "custom, practice, and

policy" at issue or set out good cause to support reopening the September 21, 2015 deadline to

file a motion for leave to amend or add parties.

Rule 16(b) of the Federal Rules of Civil Procedure, which governs pretrial conferences,

scheduling, and management, applies when a request to file an amended complaint is made after

the relevant scheduling order deadline has expired.[134]  Rule 16(b) provides, in part, that a

scheduling order "shall not be modified except upon a showing of good cause and by leave of the

district judge[.]"[135]  The "good cause" standard requires the "party seeking relief to show that the

deadlines cannot reasonably be met despite the diligence of the party needing the extension."[136]

The absence of prejudice to the nonmovant or the ability to address prejudice through a further

continuance in the dispositive motion deadline or trial are generally insufficient to demonstrate

"good cause."[137]

Plaintiff has not satisfied the "good cause" standard to re-open an expired scheduling

---

[133]  Local Court Rule CV-7(b) states, in part: "When a motion for leave to file a pleading, motion, or other submission is required, an executed copy of the proposed pleading, motion or other submission shall be filed as an exhibit to the motion for leave."

[134]  Hawthorne Land Co. v. Occidental Chem. Corp., 431 F.3d 221, 227 (5th Cir. 2005), cert. denied, 549 U.S.811, 127 S.Ct. 48 (2006); S&W Enter., L.L.C. v. Southtrust Bank of Al., NA, 315 F.3d 533, 536 (5th Cir. 2003).

[135]  FED. R. CIV. P. 16(b).

[136]  S&W Enter., 315 F.3d at 536 (citation omitted).

[137]  Bakner v. Xerox Corp. Employee Stock Ownership Plan, No. SA-98-CA-0230-OG, 2000 WL 33348191, at * 14 (W.D. Tex. Aug. 28, 2000).

order deadline and plaintiff's motion can be denied on that ground alone.  Further, plaintiff has

not filed and served a copy of his proposed amended pleading as an attachment to his motion to

amend, another independent ground to deny plaintiff's motion to amend.

 With respect to the merits of plaintiff's proposed amendment—to the extent they can be

ascertained from plaintiff's motion to amend and attachments—the Fifth Circuit has explained

that "[o]nly upon movant's demonstration of good cause to modify the scheduling order will the

more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny

leave."[138]  Rule 15(a)(1) provides, in sum, that a "party may amend its pleading once as a matter

of course within" 21 days after serving it or, "if the pleading is one to which a responsive

pleading is required, within 21 days after service of a responsive pleading or 21 days after service

of a Rule 12(b), (e), or (f), motion, whichever is earlier."[139]  Rule 15(a)(2) addresses all other

amendments.[140]  Although Rule 15(a)(2) provides that leave shall be freely given "when justice

so requires,"[141] leave is not automatic.[142]  Whether to grant leave "lies within the sound discretion

---

[138] <u>Hawthorne Land Co.</u>, 431 F.3d at 227 (quoting <u>S&W Enter.</u>, 315 F.3d at 536).

[139] FED. R. CIV. P. 15(a)(1)(A), (B).  The Advisory Committee Notes state that the 21-day periods are not cumulative.  For example, "if a responsive pleading is served after one of the designated motions is served, there is no new 21-day period."  Advisory Committee Notes on FED. R. CIV. P. 15 (2009 Amendments).

[140] Rule 15(a)(2) provides:
In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires.
FED. R. CIV. P. 15(a)(2).

[141] FED. R. CIV. P. 15(a)(2).

[142] <u>In re Southmark Corp.</u>, 88 F.3d 311, 314 (5th Cir. 1996), <u>cert. denied</u>, 519 U.S. 1057, 117 S.Ct. 686 (1997).  <u>See</u> <u>Bakner</u>, 2000 WL 33348191, at * 14 (citing <u>Geiserman v. McDonald</u>, 893 F.32d 787, 790 (5th Cir. 1990)).

of the district court."[143]  "In exercising its discretion, the Court may consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the amendment."[144]

Here, the time for plaintiff to amend as a matter of course has long since expired. Further, the proposed amendment would appear to be futile as BCADC is not a jural entity and plaintiff's motion to amend and its attachments do not identify facts that to show the Sheriff can be held liable, as a supervisor, for plaintiff's claims.  Plaintiff agrees he reported the alleged assault to a supervisor of defendant, an investigation was conducted, and plaintiff did receive medical attention.  That plaintiff is dissatisfied with the grievance process does not automatically state a claim for a civil rights violation based on an unspecified deficient grievance custom, practice, or procedure.  In sum, plaintiff's motion to amend his complaint[145] is **denied**.

## 2.    defendant's objections to plaintiff's summary judgment evidence

On January 14, 2016, defendant filed objections to certain purported evidence included in plaintiff's motion for summary judgment filed December 22, 2015.[146]  In sum, defendant objected to considering unsworn submissions as competent summary judgment evidence,

---

[143]  Bakner, 2000 WL 33348191, at * 14 (citing Louisiana v. Litton Mortg. Co., 50 F.3d 1298, 1302-03 (5th Cir. 1995)).

[144]  Id. (citing Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230 (1962); Southmark Corp., 88 F.3d 314-15).

[145]  Docket no. 43.

[146]  Docket no. 41.

evidence not in the record before the Court, and hearsay.[147]  Defendant also objected to the

consideration of any evidence filed by plaintiff after the expiration of the December 18, 2015

deadline to file dispositive motions.[148]  Plaintiff responded to the objection on February 5,

2016.[149]

  The Court has carefully reviewed each side's submissions in connection with the

preparation of this Memorandum Decision and Order. The Court has considered only correctly

competent summary judgment evidence that has been correctly authenticated and to the extent it

is not hearsay.  Specifically, with respect to whether defendant is entitled to judgment as a matter

of law on plaintiff's claims, the Court has reviewed and considered plaintiff's arguments, but has

not considered plaintiff's arguments regarding the occurrences giving rise to plaintiff's claims as

if it were competent, admissible summary judgment evidence unless the matter has been

presented in a sworn submission and is otherwise admissible.  Otherwise, as plaintiff's December

22, 2015 motion for summary judgment appears to serve also as plaintiff's response to

defendant's motion for summary judgment, any competent summary judgment evidence

submitted with plaintiff's motion for summary judgment has not been discounted simply because

plaintiff's December 22, 2015 motion for summary judgment was untimely filed.  In sum, to the

extent defendant's January 14, 2016 objections ask the Court not to consider as competent

summary judgment evidence the unsworn submissions, hearsay, or otherwise objectionable

evidence submitted by plaintiff with plaintiff's motion for summary judgment, the objections are

---

[147] Id. at 1-3.

[148] Id. at 1.

[149] Docket no. 42.

**sustained**.

### 3.      defendant's motion to strike plaintiff's discovery requests

On March 15, 2016, defendant filed a motion to strike plaintiff's first request for

production of documents and plaintiff's request for admissions served on defendant Rodriguez

and non-party, BCADC on March 14, 2016.[150]  Pursuant to the Court's scheduling order,

discovery expired on December 4, 2015.   Yet, plaintiff's discovery requests at issue were dated

by plaintiff on March 9, 2016 and not received by defendant and BCADC until March 14, 2016.

Thus, defendant's motion to strike the discovery requests is **granted**.  As a result of granting

defendant's motion to strike plaintiff's discovery requests, plaintiff's motion to dismiss

defendant's motion to strike plaintiff's discovery requests[151] is **denied** as **moot**.

### 4.      defendant's motion to strike plaintiff's corrected motion for summary judgment

On March 29, 2016, defendant moved to strike plaintiff's corrected motion for summary

judgment filed on March 24, 2016.[152]  Plaintiff's "corrected" motion for summary judgment does

not clearly state how the corrected motion differs from the motion for summary judgment

plaintiff filed on December 22, 2015.[153]  Plaintiff does not explain why he could not have filed

his corrections in a more timely fashion.  Plaintiff does not attach any new affidavits to the

"corrected" motion, but simply refers to two exhibits he attached to his December 22, 2015

---

[150] Docket no. 46.

[151] Docket no. 50.

[152] Docket no. 49.

[153] Docket no. 48.

motion for summary judgment.  In sum, defendant's motion to strike plaintiff's corrected motion for summary judgment is **granted** and the Court **strikes** plaintiff's March 24, 2016 corrected motion for summary judgment on the ground it was filed approximately three months after the December 22, 2015 deadline to file dispositive motions and plaintiff has not demonstrated "good cause" to reopen the expired deadline to file a new dispositive motion.[154]  Nevertheless, as reflected in this ruling, even if the arguments and evidence addressed in plaintiff's "corrected" motion are considered, defendant's motion for summary judgment should be granted and plaintiff's cross-motions for summary judgment should be denied.

**5.    other requests**

Any requests for relief made by any party that are not expressly granted in this Memorandum Decision and Order are **denied**.

## VII.  CONCLUSION

Based on the foregoing, it is **ORDERED** that:

- defendant's motion for summary judgment[155] is **GRANTED** and plaintiff's § 1983 claims alleging excessive force and denial of medical care are **dismissed with prejudice**;

- plaintiff's motion for summary judgment[156] is **DENIED**;

---

[154]  Plaintiff's December 22, 2015 motion for summary judgment was also filed after the December 18, 2015 deadline to file dispositive motions, but the Court has not entered an order to strike the motion because the certificate of service included in the motion states plaintiff provided it for mailing on December 15, 2015, before the expiration of the dispositive motions deadline.  Docket no. 38-2 at 3.  It is also noted that defendant did not move to strike plaintiff's December 22 motion for summary judgment (only objected to the evidence submitted with the December 22 motion), but did move to strike plaintiff's March 24 "corrected" motion.

[155]  Docket no. 35.

[156]  Docket no. 38.

- plaintiff's motion to amend complaint[157] is **DENIED** for the reason that plaintiff has not demonstrated "good cause" to re-open the expired scheduling order deadline;

- defendant's motion to strike plaintiff's discovery requests[158] is **GRANTED** and plaintiff's discovery requests[159] are **stricken**;

- defendant's motion to strike plaintiff's corrected motion for summary judgment[160] is **GRANTED** and plaintiff's corrected motion for summary judgment[161] is **stricken**;

- plaintiff's motion to dismiss defendant's motion to strike plaintiff's discovery requests[162] is **DENIED** as **moot**; and

- any other motions or requests for relief requested and not expressly granted are **DENIED**.

The District Clerk is directed to enter final judgment in favor of defendants on each of plaintiff's claims, each side to bear its own costs.

**ORDERED, SIGNED** and **ENTERED** this 12th day of April, 2016.

*Pamela A. Mathy*

**PAMELA A. MATHY**
**UNITED STATES MAGISTRATE JUDGE**

---

[157] Docket no. 43.

[158] Docket no. 46.

[159] Docket no. 47.

[160] Docket no. 49.

[161] Docket no. 48.

[162] Docket no. 50.